37 F.3d 1496
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Billy Mason ESKRIDGE, Defendant-Appellant.
 No. 94-5213.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1994.
Decided Oct. 24, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-93-246)
 C. Cooper Fulton, Asst. Fed. Public Defender, Charleston, W.Va., for appellant.
 Sharon Mullen Frazier, Asst. U.S. Atty., Huntington, W.Va., for appellee.
 On Biref: Hunt L. Charach, Fed. Public Defender, Charleston, W.Va., for appellant.
 Rebecca A. Betts, U.S. Atty., Kelly D. Ambrose, Asst. U.S. Atty., Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before NIEMEYER and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Billy Mason Eskridge pled guilty to bank fraud in September, 1993, and was sentenced to 57 months imprisonment and five months of supervised release. Eskridge challenges his sentence on appeal, claiming that the district court (1) erred in departing upward on the basis of his criminal history and (2) failed to explain adequately its extrapolation from criminal history category VI to hypothetical category XIV. We affirm.
 
 I.
 
 2
 Eskridge's criminal history spans nearly his entire life, beginning with a conviction for forgery at age 14. Since then, he has engaged in a sustained pattern of fraudulent conduct. He has accumulated 98 aliases and obtained false identity papers for a number of them. He has posed as a clergyman, a doctor, and a licensed practical nurse in order to gain the confidence of victims he defrauded. Eskridge has been in prison several times and resumed criminal conduct upon each release.
 
 
 3
 In March, 1992, Eskridge opened a bank account at a West Virginia bank with a nominal deposit of $808.72. Over the following year, posing as a Catholic priest, he wrote more than $26,000 in bad checks on this account. In February, 1993, he was arrested after trying to pass a check drawn on this account at a North Dakota bank. Later, in the Southern District of West Virginia, he was charged with and pled guilty to a single count of bank fraud.
 
 
 4
 At sentencing the district court found that Eskridge's total offense level was 11 and that Eskridge had 37 criminal history points, placing him in criminal history category VI under the Sentencing Guidelines. Based on the extent of Eskridge's prior crimes, however, the court found that category VI significantly underrepresented the seriousness of his criminal history and his likelihood of recidivism. Accordingly, the court created hypothetical criminal history categories and corresponding point ranges from category VII (16-18 points) to category XIV (37 or more points). Based on Eskridge's 37 points, the court placed him into category XIV. The court then extrapolated a sentence range from the table and imposed a sentence of 57 months imprisonment and five months supervised release. As a basis for its departure, the district court relied on the following: (1) the frequency and seriousness of Eskridge's crimes, (2) his pattern of absconding, and (3) several juvenile convictions for which he had received no criminal history points.
 
 II.
 
 5
 Eskridge first challenges the district court's decision to impose an upward departure above category VI. Section 4A1.3 of the Sentencing Guidelines permits an upward departure "when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." Eskridge argues that a departure above category VI is warranted only when a defendant has a history of violent crime, relying on United States v. Rusher, 966 F.2d 868 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992). In Rusher we said, " '[o]nly the most compelling circumstances--for example, prior misconduct accompanied by wanton cruelty,' would justify a 4A[1.3] departure above category VI." Id. at 885 ( quoting United States v. Coe, 891 F.2d 405, 413 (2d Cir.1989)).
 
 
 6
 Eskridge reads Rusher too narrowly. By giving "wanton cruelty" as an example of behavior that would be sufficient to support a departure above category VI, we did not preclude egregious, non-violent conduct from likewise serving as a basis for upward departure. The guidelines pose no such restriction and even cite large-scale fraud, which is non-violent, as potentially supporting a departure above category VI. U.S.S.G. Sec. 4A1.3.
 
 
 7
 The district court properly found, based on the number and nature of Eskridge's prior offenses and the likelihood that Eskridge would commit similar crimes in the future, that category VI significantly underrepresented Eskridge's criminal history. The court did not err in deciding to depart upward.
 
 III.
 
 8
 Eskridge next argues that the district court erred by failing to explain adequately the nature and extent of its departure. First, he claims the court was required to explain its decision to depart horizontally (by creating new criminal history categories) instead of vertically (by moving down the sentencing table within a single criminal history category). Eskridge concedes that this court has previously approved horizontal departure. See United States v. Cash, 983 F.2d 558 (4th Cir.1992), cert. denied, 113 S.Ct. 2380 (1993). However, he contends that the guidelines express a preference for vertical departure:
 
 
 9
 [T]he court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in criminal history category VI until it finds a guideline range appropriate to the case.
 
 
 10
 U.S.S.G. Sec. 4A1.3 (emphasis added). According to Eskridge, the word "should" required the district court to explain its decision to depart horizontally rather than vertically. In Cash, however, we determined that horizontal departure was consistent with Sec. 4A1.3, 983 F.2d at 561 n. 6, and we did not require the sentencing court to explain its choice of methods. Thus, the district court here did not abuse its discretion by departing horizontally rather than vertically.
 
 
 11
 Second, Eskridge claims the district court did not adequately justify a departure to hypothetical criminal history category XIV. He cites Cash 's rule that a court "should move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." Id. at 561. He argues that the district court failed to consider separately each criminal history category between VI and XIV to determine whether it adequately reflected his criminal background.
 
 
 12
 We believe that the district court's approach here was sufficient to meet the requirements of Cash. The court found that Eskridge had 37 criminal history points. It computed criminal history point ranges for each hypothetical category between VI and XIV. Each category was constructed separately. Eskridge's 37 criminal history points were greater than the calculated range for each category from VI to XIII, so the court placed him into category XIV. Furthermore, the court gave nine specific reasons--ranging from Eskridge's use of aliases and false identification to his return to criminal habits after every release--to justify an upward departure. As required by Cash, the court obviously determined that each category below the one eventually selected did not adequately reflect Eskridge's criminal history.*
 
 IV.
 
 13
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 *
 The district court set out its nine reasons for upward departure immediately before constructing the hypothetical categories. The court could have made its compliance with Cash more apparent had it integrated its discussion of the extensive facts justifying upward departure with its construction of each successively higher hypothetical category. In other words, it would have been preferable to explain how one or more of the factors justifying departure made each rejected category insufficient. The rule of Cash bears repeating: "In determining the extent of a departure based on inadequacy of criminal history above Criminal History Category VI, the court should move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." Id